UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

**LORENZO LOPEZ,**

        **Plaintiff,**

v.                                                **Case No.: 6:10-cv-1887-ORL-35KRS**

**VIRGINIA WIN and TARGET CORPORATION,**

        **Defendants.**
_____/

## ORDER

**THIS CAUSE** comes before the Court for consideration of Defendant Target Corporation's Motion to Dismiss with Prejudice Counts II, III and V of the Plaintiff's Complaint (Dkt. 4) and Plaintiff's Response (Dkt. 10) in opposition thereto. Upon consideration of all relevant filings and case law and being otherwise fully advised, the Court **GRANTS** Defendant Target Corporation's Motion (Dkt. 4) and **DISMISSES** this case in its entirety without prejudice.

### I. BACKGROUND

On November 19, 2010, Plaintiff filed a five-count Complaint in state court. (Dkt. 2.) The Complaint alleges that Plaintiff visited a Target department store ("Target") on May 21, 2008, to fill a medical prescription for his wife. (Dkt. 2 at ¶ 10.) Plaintiff states that he entered a line for Register Number Twenty-Five (25) and waited five (5) minutes to reach the cashier only to have the cashier, Defendant Win, inform him that her register was closed. (Dkt. 2 at ¶ 14.) Plaintiff states that he hesitated to leave the line because there were other people standing behind him, but Defendant Win again told

1

him in a "very rude tone of voice that her register was closed." (Dkt. 2 at ¶ 14.) Plaintiff states that he was the only Hispanic in that line. (Dkt. 2 at ¶ 15.) Plaintiff allegedly left the register to look for an open register, but he saw Defendant Win continue to serve the next person in line, while laughing and gesturing toward Plaintiff. (Dkt. 2 at ¶ 15.)

The Complaint states that a supervisor at the Target Store observed Plaintiff, informed him that Register Number Twenty-Five (25) would complete his transaction, directed him to go back to that register, and then instructed Defendant Win to assist Plaintiff. (Dkt. 2 at ¶¶ 16, 17.) Plaintiff alleges that after again waiting in line at Register Number Twenty-Five (25), Defendant Win said "Don't you listen? I'm closed." (Dkt. 2 at ¶ 18.) Plaintiff allegedly responded that the supervisor had told him to return to her register, to which Defendant Win "rudely and even louder stated, 'Don't you understand? I'm closed to YOU!'" (Dkt. 2 at ¶ 18.) According to the Complaint, Plaintiff again left that register and again saw Defendant Win speaking with other customers, gesturing toward Plaintiff and laughing. (Dkt. 2 at ¶ 19.)

Plaintiff then proceeded to another register and completed his transaction without apparent incident. (Dkt. 1 at ¶ 20.) Thereafter, Plaintiff states that the supervisor approached him again, apologized and gave Plaintiff three coupons worth three dollars each. (Dkt. 2 at ¶ 22.) Plaintiff states that he left the store but returned in hopes of speaking with a general manager. (Dkt. 2 at ¶ 24.) Plaintiff claims he spoke with a different supervisor who told him that the cashier's name was Virginia Win. (Dkt. 2 at ¶ 25.) That supervisor also informed him that Defendant Win had acted in a discriminatory fashion toward minority customers on at least two prior occasions. (Dkt. 2 at ¶ 25.) On the basis of these factual allegations, Plaintiff brings this suit for

intentional infliction of emotional distress against Defendant Win ("Count I"); for vicarious liability against Defendant Target Corporation ("Count II"); for negligent training, supervision, and retention against Defendant Target Corporation ("Count III"); for violation of 42 U.S.C. § 1981 against Defendant Win ("Count IV"); and for violation of 42 U.S.C. § 1981 against Defendant Target Corporation ("Count V").

Defendant Target Corporation removed the matter to this Court (Dkt. 1) and filed the instant Motion to Dismiss. (Dkt. 4.) Defendant Target Corporation argues that Count II of the Complaint should be dismissed because the conduct at issue did not rise to the level of outrageousness required by law to maintain an action for intentional infliction of emotional distress. (Dkt. 4 at ¶ 6.) The Motion also states that Count V should be dismissed because Plaintiff was not prevented from completing his transaction. (Dkt. 4 at ¶ 12.) Finally, the Defendant Target Corporation argues that, if the Court dismisses Count II and V, Count III should also be dismissed because Plaintiff has failed to allege an underlying tort recognized under common law. (Dkt. 4 at ¶ 14.)

Plaintiff filed a Response in opposition to the Motion to Dismiss on December 27, 2010. (Dkt. 10.) In the Response, Plaintiff argues that the Complaint states a valid claim for intentional infliction of emotional distress and for violation of 42 U.S.C. § 1981. (Dkt. 10 at 6-16.) Plaintiff also contends that dismissal is inappropriate as to Count III because Defendant Win committed the underlying tort of intentional infliction of emotional distress. (Dkt. 10 at 17.)

## II. LEGAL STANDARD

The threshold for surviving a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6) is a low one. Quality Foods de Centro Am., S.A. v. Latin Am.

Agribusiness Dev. Corp., S.A., et al., 711 F.2d 989, 995 (11th Cir. 1983). A plaintiff must plead only sufficient facts to state a claim to relief that is plausible on its face. Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1968-69 (2007) (abrogating the "no set of facts" standard for evaluating a motion to dismiss established in Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). Although a complaint challenged by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff is still obligated to provide the "grounds" for his entitlement to relief, and "a formulaic recitation of the elements of a cause of action will not do." Berry v. Budget Rent A Car Sys., Inc., 497 F. Supp. 2d 1361, 1364 (S.D. Fla. 2007) (quoting Twombley, 127 S.Ct. at 1964-65).

In evaluating the sufficiency of a complaint in light of a motion to dismiss, the well pleaded facts must be accepted as true and construed in the light most favorable to the plaintiff. Quality Foods, 711 F.2d at 994-95. However, the court should not assume that the plaintiff can prove facts that were not alleged. Id. Thus, dismissal is warranted if, assuming the truth of the factual allegations of the plaintiff's complaint, there is a dispositive legal issue which precludes relief. Neitzke v. Williams, 490 U.S. 319, 326 (1989).

### III. DISCUSSION

#### A. Intentional Infliction of Emotional Distress

With respect to the claim for intentional infliction of emotional distress, the Court finds that Plaintiff fails to state a claim. A cause of action for intentional infliction of emotional distress requires a plaintiff to establish (1) deliberate or reckless infliction of mental suffering; (2) outrageous conduct; (3) the complained of conduct caused the suffering; and (4) the suffering was severe. Metropolitan Life Ins. Co. v. McCarson, 467

So. 2d 277 (Fla. 1985). The Florida Supreme Court elaborated in McCarson that the action complained of must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." McCarson, 467 So. 2d at 278.

"Florida courts have been reluctant to find claims for intentional infliction of emotional distress based solely on allegations of verbal abuse." De La Campa v. Grifols Am., Inc., 819 So. 2d 940, 943 (Fla. 3d DCA 2002) (collecting cases and holding that a "severe and pervasive pattern of sexual harassment, including but not limited to derogatory comments relating to homosexuality and other unwelcome abusive acts and conduct" was insufficient to state a cause of action for intentional infliction of emotional distress.) Thus, liability under this cause of action does not extend to "mere insults, indignities, threats, or false accusations," even when those insults involve racial slurs or other racially inflammatory conduct. Williams v. Worldwide Flight SVCS., Inc., 877 So. 2d 869, 870 (Fla. 3d DCA 2004) (affirming dismissal of complaint that included allegations that racial discrimination by employer, including offensive racial slurs and false accusations of theft); see also Vance v. S. Bell Tel. & Tel. Co., 983 F.2d 1573, 1575 n.7 (11th Cir. 1993) (affirming dismissal of claim for intentional infliction of emotional distress under Florida law where employer engaged in various acts of racial harassment, including hanging a "noose" over the employee's work station on two occasions); Martinez v. Pavex Corp., 422 F. Supp. 2d 1284, 1297 (M.D. Fla. 2006) (allegations that a plant operator repeatedly used racial slurs and delayed and inconvenienced independent contractor truck drivers while they delivered materials to the plant held insufficient under Florida law).

Plaintiff here alleges that he was inconvenienced and verbally abused on the basis of his race during the course of a retail transaction. Accepting these allegations as true, the Court finds that such conduct is insufficient under Florida law to maintain an action for intentional infliction of emotional distress. There is no question that the conduct described in Plaintiff's Complaint is rude and reprehensible, particularly in light of the discriminatory intent alleged. But, as the cases cited above demonstrate, Florida law requires a truly extreme level of outrageousness to support an action for intentional infliction of emotional distress in cases of verbal abuse, even when the conduct is motivated by racial animus. The alleged conduct of Defendant Win, though opprobrious, is not "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." McCarson, 467 So. 2d at 278. Accordingly, Plaintiff fails to state a claim for intentional infliction of emotional distress under Florida law.

Because Plaintiff fails to state a claim against Defendant Win for this tort, the Court finds that Plaintiff's derivative claims against Defendant Target for vicarious liability and for negligent training, supervision and retention are also unsustainable. Anderson Trucking Serv., Inc. v. Gibson, 884 So. 2d 1046, 1051 (Fla. 5th DCA 2004) ("The courts have consistently held that a party may not be held vicariously liable if the tortfeasor is exonerated"); Tex. Skaggs, Inc. v. Joannides, 372 So. 2d 985, 987 (Fla. 2d DCA 1979) (in order to impose liability on an employer for negligent training, supervision and retention, a plaintiff must first show that he was injured by the wrongful act of an employee).

B. Claims under 42 U.S.C. § 1981

The allegations in Plaintiff's Complaint are also insufficient to state a claim under 42 U.S.C. § 1981. The elements of a cause of action under § 1981 are (1) that the plaintiff is a member of a racial minority; (2) that the defendant intended to discriminate on the basis of race; and (3) that the discrimination concerned one or more of the activities enumerated in the statute. Kinnon v. Arcoub, Gopman & Assocs., Inc., 490 F.3d 886, 891 (11th Cir. 2007). This statute primarily protects contractual rights, and the Eleventh Circuit has observed that: "[t]o state a claim under § 1981, a plaintiff must identify an 'impaired contractual relationship under which the plaintiff has rights.'" Id. (quoting Domino's Pizza, Inc. v. McDonald, 546 U.S. 470, 474 (2006)).

In Kinnon, the Eleventh Circuit approved of the "significant distinction" recognized by the Fifth Circuit between contractual relationships in employment agreements and contractual relationships in retail transactions for the purposes of § 1981. Id. (quoting Arguello v. Conoco, Inc., 330 F.3d 355, 360 (5th Cir. 2003)). In the context of retail transactions, the Eleventh Circuit noted that 42 U.S.C. § 1981 does not "provide a general cause of action for all racial harassment that occurs during the contracting process." Id. at 892. Rather, a plaintiff must show that he was "actually denied the ability either to make, perform, enforce, modify, or terminate a contract" on account of the conduct of the defendant. Id. That is, a plaintiff's "exercise of her contractual rights" must be "in some way thwarted" in order to succeed on a claim under 42 U.S.C. § 1981. Id. (citing Arguello, 330 F.3d at 359).

Plaintiff has adequately alleged the first two elements of an action under § 1981 by pleading that he is a member of a racial minority and that Defendant Win intended to

discriminate against him on the basis of his race. However, Plaintiff fails to allege conduct that satisfies the third element. Plaintiff urges the Court to hold that "the final purchase of a product, if preceded by a delay and racial discriminatory action, can serve for a basis for a claim under 42 U.S.C. § 1981." (Dkt. 10 at 14.) The Court declines to do so. Under the test established by the Eleventh Circuit for § 1981 claims in the retail context, the conduct at issue must *actually* thwart a litigant's ability to enter into a contract. The fact that Plaintiff here was ultimately, if belatedly, successful in exercising his contractual rights precludes the maintenance of his action under 42 U.S.C. § 1981 in the retail context.

In this regard, the case at bar resembles Arguello v. Conoco, Inc., 330 F.3d 355 (5th Cir. 2003), the primary case relied upon by the Eleventh Circuit in promulgating its test for evaluating claims under § 1981 in this context. See Kinnon, 490 F.3d at 891-93. In Arguello, the plaintiffs attempted to purchase gasoline and beer from a gas station clerk who demanded identification and initially told the plaintiffs that she would not accept an out-of-state license. Arguello, 330 F.3d at 357. The clerk subsequently completed the transaction, though one plaintiff testified at the trial that the clerk "was rude to her when she reached the counter. . . [and] that [the clerk's] demeanor was less friendly than it had been with customers she had previously served . . . [and that the clerk] singled her out by demanding that she provide identification." Arguello, 330 F.3d at 356. After initially leaving, one of the plaintiffs returned to the gas station, at which point the clerk's behavior allegedly devolved into more explicitly discriminatory conduct. Id. at 357. The jury returned a verdict in favor of the plaintiffs for compensatory and punitive damages. Id. The trial court overturned that verdict, finding that the record

provided no basis upon which a reasonable jury could conclude that plaintiffs were prevented, on a discriminatory basis, from entering into a contractual relationship. Id.

The Fifth Circuit affirmed the ruling, reasoning that the plaintiff who completed her purchase[1] "cannot establish interference with an actual contract interest . . . because she successfully completed the transaction." Id. at 359. The court concluded that "her only complaint is [the clerk's] offensive conduct. Egregious as that conduct may have been, it neither prevented the formation of a contract nor altered the substantive terms on which the contract was made." Id. at 359, 361.

As in Arguello, the Plaintiff here alleges he was subjected to conduct that was discourteous and offensive. Plaintiff additionally alleges he was forced to delay his purchase because a clerk singled him out based on his status as a racial minority. Ultimately, though, Plaintiff completed his transaction. Thus, notwithstanding the discriminatory conduct of Defendant Win, Plaintiff cannot establish that the Defendants actually thwarted the exercise of a contract interest as required by the Eleventh Circuit to sustain a § 1981 claim in this context. Kinnon, 490 F.3d at 892 (plaintiff who entered into contract to purchase pizza and then terminated the contract because delivery was late could not bring claim under § 1981 because she was not "actually denied the ability to either make, perform, enforce, modify or terminate a contract" because of discriminatory conduct); Arguello, 330 F.3d at 358-59 (noting that a § 1981 claim "must allege that the plaintiff was *actually prevented, not merely deterred*, from making a purchase or receiving service after attempting to do so") (quoting Morris v. Dillard Dep't Stores, Inc., 277 F.3d 743, 752 (5th Cir. 2001) (emphasis in original)); see also Rogers

---

[1] The court also held that a co-plaintiff who abandoned his purchase because of the clerk's behavior could not state a claim because he voluntarily left without trying to buy the merchandise. Arguello, 330 F.3d at 359.

v. Elliott, 135 F. Supp. 2d 1312, 1315 (N.D. Ga. 2001) (collecting cases and concluding that "[v]irtually all federal courts that have analyzed Section 1981 claims in the retail merchandise context have required the plaintiff to show that he was actually prevented from making a purchase").

Plaintiff cites three cases from different jurisdictions in support of his claim. The first two cases are inapposite. See Garrett v. Tandy Corp., 295 F.3d 94, 100-01 (1st Cir. 2000) (affirming the district court's dismissal a § 1981 action, noting that "Congress did not intend to convert section 1981 into a general prohibition against race discrimination" and finding that close surveillance did not impede the plaintiff's formation of a contract); see also Christian v. Wal-Mart Stores, Inc., 252 F.3d 862 (6th Cir. 2001) (announcing a test that appears to have been rejected by all other circuits, [2] including the Eleventh Circuit, and holding that discriminatory motive was jury question). The third case cited by Plaintiff, Williams v. Cloverland Farms Dairy, Inc., 78 F. Supp. 2d 479 (D. Md. 1999), bears a factual resemblance to the case at bar, as alleged by Plaintiff. But the district court there found, contrary to binding Eleventh Circuit precedent, that a claim could lie under § 1981 for a mere "delay in completing [a] transaction, coupled with [an] alleged racial attack. . . ." That is not the law of the Eleventh Circuit. For the reasons set forth above, the Court finds that Plaintiff fails to state a claim against Defendant Target under 42 U.S.C. § 1981.

With respect to the § 1981 claim against Defendant Win, the Court notes that this defendant has not filed an answer to the Complaint. Typically, a plaintiff would be allowed to proceed against a defaulting defendant by first moving for a clerk's default

---

[2] Odunukwe v. Bank of Am., 335 F. App'x 58, 61 (1st Cir. 2009) ("Apart from the 6th Circuit, it does not appear that any other circuit court has embraced the Christian court's expanded formulation.").

under Fed. R. Civ. P. 55(a) and then, if appropriate, moving for a default judgment. However, a defendant's default, standing alone, does not require the court to enter a default judgment. Nishimatsu Const. Co. v. Houston Nat'l Bank, 515 F.2d 1200, 1206 (5th Cir. 1975). To enter a judgment, there must be a sufficient basis in the pleadings to support the entry of judgment. Id. As explained by the Eleventh Circuit, "before entering a default *judgment* for damages, the district court must ensure that the well-pleaded allegations in the complaint, which are taken as true due to the default, actually state a substantive cause of action." Tyco Fire & Sec., LLC v. Alcocer, 218 F. App'x 860, 863 (11th Cir. 2007) (emphasis in original). Where it is clear that a complaint against a defaulted defendant fails as a matter of law, a district court should not grant a default judgment but instead should dismiss the complaint. Marshall v. Baggett, 616 F.3d 849, 855 (8th Cir. 2010) (district court "should have dismissed the complaint" because it "fails as a matter of law" as against defaulted defendant in her individual capacity); see also Bixler v. Foster, 596 F.3d 751, 761-62 (10th Cir. 2010) (district court did not abuse its discretion in declining to consider entering a default judgment where the plaintiffs' claims were subject to dismissal on the merits).

In this matter, the Court has already found, supra, that Plaintiff cannot state a claim against Defendant Win for intentional infliction of emotional distress. The Court has additionally found that Plaintiff cannot state a claim against Defendant Target under 42 U.S.C. § 1981. No claim lies against Defendant Win under 42 U.S.C. § 1981 for similar reasons. Specifically, Plaintiff completed his transaction and therefore cannot make the threshold showing of an impairment of his right to contract, as required as to bring a claim under 42 U.S.C. § 1981. Domino's Pizza, Inc. v. McDonald, 546 U.S. 470,

476 (2006). ("Any claim brought under § 1981, therefore, must initially identify an impaired 'contractual relationship' . . . under which the plaintiff has rights."). Moreover, the Complaint does not allege that Plaintiff ever intended to enter into a contract with Defendant Win; it only alleges that Plaintiff sought to purchase merchandise from Defendant Target. Because Plaintiff succeeded in that endeavor and never desired to contract with Virginia Win individually, the Court finds no basis for liability against Defendant Win under 42 U.S.C. § 1981.

Having found that the Complaint fails to state a claim against Defendant Win under Count I, intentional infliction of emotional distress, and under Count IV, violation of 42 U.S.C. § 1981, the Court finds no cause to allow this matter to proceed against Defendant Win, notwithstanding her failure to respond to the Complaint. Therefore, in the interest of judicial economy and because the matter has been adjudicated on the merits, the Court finds it appropriate to dismiss the Complaint in its entirety. See Bixler v. Foster, 596 F.3d 751, 761-62 (10th Cir. 2010) (affirming dismissal of complaint and refusal to consider entering a default judgment: "Even if an entry of default had been appropriate, it would not have been sufficient to entitle plaintiffs to a judgment against [the defaulting defendant]" because "plaintiffs' claims were barred or were subject to dismissal under Rule 12(b)(6).").

Finally, the Court is aware that without seeking leave of Court Plaintiff filed an Amended Complaint (Dkt. 15) on March 16, 2011. The Amended Complaint is untimely, as the deadline for filing amended pleadings expired on March 15, 2011. (Dkt. 14.) For that reason, the Amended Complaint should be stricken. In addition, the Court finds that the Amended Complaint raises no new material factual allegations that would cure

the defects referenced in this Order, and it raises no new legal theories. Although its language is altered slightly, the Amended Complaint pleads identical causes of action. (See Dkt. 15.) The only substantive difference between the two submissions appears to be a request, pursuant to 42 U.S.C. § 1988(b), for attorney's fees and other costs associated with bringing the § 1981 action. (Dkt.15 at ¶¶ 67, 78.) Because the Amended Complaint is untimely and would not alter the disposition of this matter in any event, the Court hereby **STRIKES** the Amended Complaint filed without leave of Court.

Based on the foregoing, it is hereby **ORDERED** that Defendant Target Corporation's Motion to Dismiss with Prejudice Counts II, III and V of the Plaintiff's Complaint (Dkt. 4) is **GRANTED**. Counts II, III, and V against Defendant Target are **DISMISSED** without prejudice. It is further **ORDERED** that Counts I and IV against Defendant Win are **DISMISSED** without prejudice. The **CLERK** is directed to **STRIKE** Plaintiff's Amended Complaint (Dkt. 15), **TERMINATE** any pending motions and **CLOSE** this case.

**DONE and ORDERED** in Orlando, Florida, on this 18th day of March 2011.

MARY S. SCRIVEN
UNITED STATES DISTRICT JUDGE

Copies furnished to:
Counsel of Record